1   MICHAEL D. ROUNDS, ESQ., Nevada Bar No. 4734
    mrounds@bhfs.com
2   STEVEN A. CALOIARO, ESQ., Nevada Bar No. 12344
    scaloiaro@bhfs.com
3   BROWNSTEIN HYATT FARBER SCHRECK, LLP
    5371 Kietzke Lane
4   Reno, NV 89511
    Telephone: 775.324.4100
5   Facsimile: 775.333.8171

6   *Attorneys for Plaintiff SATA GmbH & Co. KG*

7

8               **UNITED STATES DISTRICT COURT**

9                    **DISTRICT OF NEVADA**

10  SATA GmbH & Co. KG, a German
    corporation,                          CASE NO.:
11
                Plaintiff,                **COMPLAINT**
12
    v.                                    **(JURY DEMAND)**
13
    ZHEJIANG REFINE WUFU AIR TOOLS
14  CO., LTD.; PRONA TOOLS, INC.; ROES
    I-X, inclusive,
15
                Defendants.
16

17         Plaintiff SATA GmbH & Co. KG ("SATA") hereby states its complaint against

18  Defendants Zhejiang Refine Wufu Air Tools Co., Ltd ("WUFU") and PRONA TOOLS, INC.,

19  ("PRONA") (sometimes collectively referred to herein as "Defendants") as follows:

20                          **INTRODUCTION**

21         SATA is a world leader in the production of paint spray guns, airbrushes, and workplace

22  safety and security equipment, and other related products. The Automobile Aftermarket Products

23  Expo (the "AAPEX") trade show is currently underway at the Sands Expo Convention Center in

24  Las Vegas, Nevada. The show began on Tuesday, November 3, 2015, and runs through

25  Thursday, November 5, 2015. Defendant WUFU is a Chinese company presently attending and

26  presently offering goods for sale at the AAPEX trade show.

27         The SEMA trade show is also currently underway at the Las Vegas Convention Center in

28  Las Vegas, Nevada. The show began on Tuesday, November 3, 2015, and runs through Friday,

018482\0001\13761683.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

November 6, 2015. Defendant PRONA is a Canadian based distribution company for a Taiwanese manufacturer presently attending and presently offering goods for sale at the SEMA Show.

The Defendants are unlawfully advertising and offering for sale counterfeit paint spray guns and counterfeit paint spray gun reservoirs that infringe upon SATA's U.S. trademarks and U.S. design patents. Although the Defendants are presently within this judicial district, when the trade shows end, the Defendants will leave the United States and return to China, Taiwan, and Canada and ship their respective infringing goods to the United States. Accordingly, in this action, SATA seeks an *ex parte*, emergency temporary restraining and seizure order, as well as preliminary and permanent injunctive relief and money damages (including, but not limited to, statutory damages), attorneys' fees, interest, and costs.

## JURISDICTION AND VENUE

1.      This is an action for statutory trademark counterfeiting, trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; for common law trademark infringement and unfair competition; and for patent infringement in violation of 35 U.S.C. § 1, *et seq*.

2.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1119 and 1121, and pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, because this action presents questions arising under the trademark and patent laws of the United States to which Congress has granted exclusive subject matter jurisdiction to the federal courts. This Court has supplemental jurisdiction over Plaintiff's common law claims.

3.      This Court has personal jurisdiction over WUFU based upon WUFU's infringing acts of advertising and offering paint spray guns, paint spray gun reservoirs, and related products for sale in Las Vegas, Nevada at the AAPEX trade show.

4.      This Court has personal jurisdiction over PRONA based upon PRONA's infringing acts of advertising and offering paint spray guns, paint spray gun reservoirs, and related products for sale in Las Vegas, Nevada at the SEMA trade show.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

018482\0001\13761683.2

2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

5.      Venue is proper in the Las Vegas Division of the United States District of Nevada pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(b) because the Defendants do business in Nevada, have committed acts of infringement in Nevada, and are subject to personal jurisdiction in Nevada.

**THE PARTIES**

6.      SATA is a German corporation established in 1907 and organized under the laws of Germany.

7.      Upon information and belief, Defendant WUFU is a foreign business organization whose principal place of business is located in Wenling City, Zhejiang Province, China.

8.      Upon information and belief, Defendant PRONA is a foreign business organization whose principal place of business is located in Toronto, Ontario, Canada.

**GENERAL ALLEGATIONS**

***Background on SATA***

9.      SATA is a German corporation established in 1907 under the laws of Germany.

10.     SATA is a leading manufacturer of paint spray guns, paint spray gun reservoirs, and related equipment principally used to paint automobiles.

11.     SATA's products are designed and manufactured in Germany and are sold to distributors worldwide, including the United States.

12.     Over the past century, SATA has been a leader in the production of paint spray guns, paint spray gun reservoirs, and related equipment. SATA's paint spray guns are highly valued, well known for their quality, performance, and durability, and are used by professional car repair businesses, automobile manufacturers, yacht and boat builders, carpenters, painters, airbrush/design creators, and hobbyists worldwide.

13.     SATA offers a wide variety of paint spray guns, including HVLP (high volume, low pressure), RP (reduced pressure) and paint spray guns for automatic painting systems (*e.g.*, robots).

14.     SATA's strong reputation and goodwill in the industry is further bolstered by its strong commitment to aiding users of SATA products through free online and telephone services,

018482\0001\13761683.2

3

such as tips for painting, a forum for discussion, useful measurement calculators, video tutorials, and even an encyclopedia of terms.

### *SATA's Trademark Rights*

15.     SATA owns approximately one hundred (100) United States trademark registrations for a variety of trademarks used in connection with SATA's products (hereinafter the "SATA Marks").  The SATA Marks at issue in this case are:

- U.S. Trademark Registration No. 3,072,417, a design mark for a band of **red** color extending around the circumference of a paint reservoir for a paint spray gun, the band of **red** color extends around the circumference of the paint reservoir directly under the screw cap and has a width of approximately 5-20 mm, covering "PAINT SPRAY GUNS AND PARTS THEREOF";

- U.S. Trademark Registration No. 2,770,801, a design mark for a **green** band of color extended around the circumference of a paint spray gun air cap ring, the **green** band being narrower than the air cap ring, covering "paint spray guns"; and

- U.S. Trademark Registration No. 2,793,583, a design mark for a band of [any] color extended around the circumference of a paint spray gun air cap ring, the color band being narrower than the air cap ring and of a color that contrasts with the air cap ring, covering "paint spray guns."

### *SATA's Patent Rights*

16.     In addition to its SATA Marks, SATA also possesses substantial patent rights including, without limitation, twenty-five patents (both utility and design) registered with the United States Patent and Trademark Office (hereinafter the "SATA Patents").  In this case, three design patents are at issue.

17.     The design patents at issue are: USD 459,432 S1, USD 459,433 S1, and USD 644,716 S1 and are described in order below:

- **USD 459,432 S1:**

Claim: The ornamental design for a **spray gun head ring**, as shown and described.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100



*F I G. I*

Relevant Description:

Those portions of the structures shown in the drawings in form of broken lines represent parts of the gun other than the spray head ring.  The specific shape of these parts do not limit the present design.  Diagonal hatching in the figures represents **any shade of green coloration**. Open areas adjacent the diagonal hatching signify surface finish(es) that is/are colored or uncolored, including metallic finish, such as chrome, nickel or any other silvery, metallic finish.

- **USD 459,433 S1:**

Claim: The ornamental design for a **spray gun head ring**, as shown and described.



*F I G. I*

018482\0001\13761683.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

Relevant Description:

Those portions of the structures shown in the drawings in form of broken lines represent parts of the gun other than the spray head ring. The specific shape of these parts do not limit the present design. **Solid black shading represents color contrast in the sense that the area(s) so shaded, which may be of any "color",** for example red, blue or black, is/are in color contrast with adjacent areas of the design. Open areas adjacent the solid black shading signify surface finish(es) that is/are colored or uncolored, including metallic finish, such as chrome, nickel or any other silvery, metallic finish.

- **USD 644,716 S1:**

Claim: The ornamental design for a **paint spray gun ("SATAjet 4000 B HVLP/RP digital/standard**, as shown and described.



Relevant Description:

The stippling used on the air cap ring and on the handle represents a surface having a color. In particular, where the stippling is the same, the color is the same and where the stippling is different, the color is different.

### *The 2015 Trade Shows/Discovery of Infringement*

18. The AAPEX and SEMA trade shows are among the largest annual trade shows canvassing the $477 billion automotive aftermarket industry. Manufacturers and suppliers who attend the AAPEX and SEMA trade shows represent everything from air conditioning to computer systems, to paint/coating body repair, hand tools, and similarly situated companies.

Exhibitors at the AAPEX and SEMA trade shows generate business (*i.e.*, buy and sell products) and develop and maintain business relationships with key customers and suppliers.

19.     AAPEX is currently being held between Tuesday, November 3, 2015, and Thursday, November 5, 2015, at the Las Vegas Sands Expo Center in Las Vegas, Nevada, and features approximately 2,200 exhibitors and 39,000 targeted buyers.

20.     SEMA is currently being held between Tuesday, November 3, 2015, and Friday, November 6, 2015, at the Las Vegas Convention Center in Las Vegas, Nevada, and features 60,000 qualified buyers and over 130,000 industry professionals.

21.     On November 3, 2015, SATA representatives attended the AAPEX and SEMA trade shows.

22.     While at the shows, SATA representatives visited several exhibitor booths, and observed two companies unlawfully offering for sale paint spray guns and paint spray gun reservoirs that infringe upon SATA's federally registered trademarks and its design patents. Those companies are: (a) WUFU and (b) PRONA.

23.     One of SATA's major business challenges and a significant threat to its market is the manufacture and sale of infringing products from other countries, including China, Taiwan, and Canada.

24.     Defendants are foreign companies and do not appear to have a known or regular presence in the United States.  Once AAPEX is over on Thursday and SEMA is over on Friday, Defendants will leave the United States, presumably with orders for products that infringe SATA's trademarks and design patents, and will continue to sell infringing products from their business locations in Wenling City, Zhejiang Province, China, Taiwan, and Toronto, Canada.

### ***Background of WUFU***

25.     Upon information and belief, WUFU's principal place of business is located at No. 001, Fangjia Road, Nanshanzha Industrial Zone, Chengbei Street, Wenling City, Zhejiang Province, China.

018482\0001\13761683.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

26.    Upon information and belief, WUFU is engaged in the research, development, manufacturing and marketing of paint spray guns, pneumatic tools, high-pressure prnumatic grease injectors, mini air compressors, and related air-powered tools.

27.    WUFU maintains a website located at http://en.wufutools.com/index.html.

28.    Upon information and belief, WUFU sells products to customers located in Europe, North America (including the United States), South America, Africa, the Middle East, South Africa, Australia and Asia.

### ***WUFU's Presence at AAPEX***

29.    WUFU is currently advertising and offering for sale paint spray guns, paint spray gun reservoirs, and related products at AAPEX, Booth No. 11063.

30.    The booth is staffed by several persons, including a person whom SATA was lead to believe was Mr. Billy Huang.

31.    When SATA's representatives visited the WUFU booth, they were provided with a business card, which lists an address for WUFU in Zhejiang, China.

32.    SATA officials obtained a copy of a brochure that WUFU is distributing to the buyers and others who visit the booth.

33.    The large color brochure identifies WUFU's products by name, picture, and product number.

34.    Through these efforts, SATA discovered that WUFU is advertising and offering for sale products that infringe upon SATA's U.S. trademark and U.S. design patent rights.

35.    At its booth, WUFU is offering to sell paint spray guns, including those having a **green** band of color extending around the circumference of the head ring (identified as RF2000AG and RF4000AG/RF4000GB), infringing the following SATA trademarks and design patents:

   a.    U.S. Trademark Registration No. 2,770,801 (green air cap ring);

   b.    U.S. Trademark Registration No. 2,793,583 (contrasting color air cap ring);

   c.    SATA's design patent USD 644,716 S1 (paint spray gun);

   d.    SATA's design patent USD 459,432 S1 (green spray gun head ring); and

018482\0001\13761683.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

e.    SATA design patent USD 459,433 S1 (contrasting color spray gun head ring).

Collectively, the items identified above will be referred to as the "WUFU Infringing Products."

### *Background on PRONA*

36.    Upon information and belief, PRONA's principal place of business is located at 2899 Steeles Avenue West, Unit 20, Toronto, Onatrio, Canada.

37.    Upon information and belief, PRONA is a distributor for a related company, PRONA AIR TOOL MANUFACTURING, Ltd., a Taiwanese based company with its principal place of business located at NO. 6 Shunjing Road, Hegui Industrial Zone, HeShun Town, Nanhai District, Foshan City, Guangdong Province PRC.

38.    Upon information and belief, PRONA is engaged in the research, development, manufacturing and marketing of paint spray guns, pneumatic tools, mini air compressors, and related air-powered tools.

39.    PRONA maintains a website located at www.pronatools.com.

40.    PRONA AIR TOOL MANUFACTURING, Ltd. maintains a website located at http://www.prona.com.cn/eindex.asp.

41.    Upon information and belief, PRONA sells products to customers located worldwide, including the United States.  *See* http://www.pronatools.com/about.html.

### *PRONA's Presence at the SEMA Show*

42.    PRONA is currently advertising and offering for sale paint spray guns, paint spray gun reservoirs, and related products at SEMA, Booth No. 11033.

43.    When SATA's representatives visited the PRONA booth, they were provided with a brochure, which lists an address for PRONA in Toronto, Ontario, Canada.

44.    The large color brochure identifies PRONA's products by name, picture, and product number.

45.    Through these efforts, SATA discovered that PRONA is advertising and offering for sale products that infringe upon SATA's U.S. Trademark rights.

018482\0001\13761683.2

46.     Listed in the product brochure PRONA is distributing from its booth are paint spray guns being offered for sale that have a **red** band extending around the circumference of a paint reservoir for the paint spray gun (identified as R-301 G, R-403 G, RL-403 G, R-1000 G, R-3000 G, RC-6R and RC-6M), infringing SATA's trademark, U.S. Trademark Registration No. 3,072,417.  Collectively, the products identified as R-301 G, R-403 G, RL-403 G, R-1000 G, R-3000 G, RC-6R and RC-6M will be referred to as the "PRONA Infringing Products."

### Count I - Trademark Counterfeiting - 15 U.S.C. § 1114 (Against WUFU)

47.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

48.     WUFU has used spurious designations that are identical with, or substantially indistinguishable from, the SATA Marks on goods covered by SATA's federal trademark registrations, including U.S. Trademark Registration Nos. 2,770,801 and 2,793,583.

49.     WUFU has intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale and distribution of goods including, without limitation, at the AAPEX trade show.

50.     WUFU's use of the SATA Marks to advertise, promote, offer for sale, distribute and sell the WUFU Infringing Products bearing infringing trademarks was at all times and is currently without SATA's authorization, license, or consent.

51.     WUFU's unauthorized use of the SATA Marks on and in connection with WUFU's advertisement, offering for sale, and/or distribution of the WUFU Infringing Products at the AAPEX trade show constitutes a use of the SATA Marks in commerce.

52.     WUFU's unauthorized use of the SATA Marks is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that the WUFU's Infringing Products are the same as SATA's products and/or that the WUFU Infringing Products are authorized by, sponsored by, or approved by SATA, or that WUFU is affiliated with, connected to, associated with, or in some way related to SATA; (c) result in WUFU unfairly benefiting from SATA's advertising and promotion; and (d) result in WUFU unfairly profiting from SATA's reputation

018482\0001\13761683.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

and trademarks all to the substantial and irreparable injury of the public, SATA, the SATA Marks, and the substantial goodwill they represent.

53.     WUFU's acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     By reason of the foregoing, WUFU is liable to SATA for:  (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at SATA's election, an amount representing three (3) times SATA's damages and/or WUFU's illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

55.     SATA is also entitled to temporary, preliminary, and permanent injunctive relief, including an order permitting the seizure of all "goods and counterfeit marks . . . the means of making such [counterfeit] marks, and records documenting the manufacture, sale, or receipt of things involved in such [counterfeiting] violations" pursuant to 15 U.S.C. § 1116(d).

### Count II - <u>Trademark Infringement - 15 U.S.C. § 1114 (Against WUFU)</u>

56.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

57.     Without SATA's authorization, license, or consent, WUFU has knowingly used and continues to use in commerce the SATA Marks in connection with the manufacturing, adverting, promoting, importing into, and selling in the United States the WUFU Infringing Products.  WUFU has used the SATA Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to, and/or trade off SATA's fame and the registered SATA Marks.

58.     WUFU's use of the SATA Marks is likely to: (a) confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of WUFU and SATA and/or the WUFU Infringing Products and SATA's products; and (b) is likely to cause such people to believe in error that the WUFU Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by SATA or that the WUFU Infringing Products are in some way affiliated with SATA.

018482\0001\13761683.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

59.     SATA has no control over the nature or quality of the goods and/or services WUFU offers.  Therefore, SATA's reputation and goodwill has been and continues to be damaged – and the value of the SATA Marks jeopardized – by WUFU's continued use of the SATA Marks and colorable imitations thereof.  Because of the likelihood of confusion between the WUFU Infringing Products and the SATA Marks, any defects, objections, or faults found with the WUFU Infringing Products will negatively reflect upon and injure the exceptional reputation that SATA has established for the products and services it offers in connection with the SATA Marks. As such, WUFU is liable to SATA for infringement of the SATA Marks pursuant to 15 U.S.C. § 1114.

60.     WUFU's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to SATA's trademarks, business, reputation, and goodwill. SATA has no adequate remedy at law as monetary damages are inadequate to compensate SATA for the injuries caused by WUFU to its trademarks, business, reputation, and goodwill.

61.     As a direct and proximate result of WUFU's conduct, SATA has suffered and continues to suffer damages to its valuable SATA Marks, and other damages in an amount to be proven at trial.

62.     WUFU's infringement of SATA's registered trademarks is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the SATA Marks, and an exceptional case within the meaning of 15 U.S.C. § 1117(b).

63.     SATA is entitled to temporary, preliminary, and permanent injunctive relief, as well as an award of WUFU's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

## Count III – False Designation of
## Origin/Unfair Competition - 15 U.S.C. § 1125 (Against WUFU)

64.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

65.     WUFU's use, promotion, offers to sell, sale, and/or importation of the WUFU Infringing Products violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The SATA

Marks are federally registered, and are entitled to protection under both federal and common law. The SATA Marks have distinctive appearances with unique and non-functional designs. SATA has extensively and continuously promoted and used the SATA Marks for many decades in the United States and worldwide. Through that extensive and continuous use, the SATA Marks have become well-known indicators of the origin and quality of SATA's products and have acquired substantial secondary meaning in the marketplace.

66.    WUFU's use of colorable imitations of the SATA Marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the WUFU Infringing Products by creating the false and misleading impression that the WUFU Infringing Products are manufactured by, authorized by, or otherwise associated with SATA.

67.    WUFU's use of colorable imitations of the SATA Marks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to SATA for which SATA has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the SATA Marks.

68.    On information and belief, WUFU's use of colorable imitations of the SATA Marks has been intentional and willful. WUFU's bad faith is evidenced at least by WUFU's use of marks identical to the SATA Marks on the WUFU Infringing Products. SATA is entitled to injunctive relief, and SATA is also entitled to recover WUFU's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count IV - Common Law Trademark Infringement & Unfair Competition
## (Against WUFU)

69.    SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70.    SATA was the first to use the SATA Marks. As a result of SATA's continuous promotion and sales of products bearing the SATA Marks, the SATA Marks have become widely

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

known and SATA has been identified in the public mind as the manufacturer of the products to which the SATA Marks are applied.

71.     As a result of the experience, care, and service of SATA in producing the products to which the SATA Marks are applied, these products have become widely known and have acquired a worldwide reputation for quality, styling, and utility.  Moreover, the SATA Marks have come to symbolize SATA's reputation for quality and excellence.  The SATA Marks have also acquired secondary meaning in the marketplace, and are non-functional.

72.     WUFU, with knowledge of and with intentional disregard of SATA's rights, continues to advertise, promote, and sell products using the SATA Marks, or colorable and confusing imitations thereof.  WUFU's acts are likely to cause, have caused, and will continue to cause confusion as to the source and/or sponsorship of SATA's products and services.

73.     WUFU's acts alleged herein and specifically, without limitation, WUFU's use, manufacture, promotion, offers to sell, selling, and/or importing into the United States products that are confusingly similar to products bearing the SATA Marks, infringes SATA's exclusive trademark rights in violation of the common law.

74.     WUFU's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to SATA's trademarks, business, reputation, and goodwill.  SATA has no adequate remedy at law because monetary damages are inadequate to compensate SATA for the injuries caused by WUFU to its trademarks, business, reputation, and goodwill.

75.     On information and belief, WUFU's use of colorable imitations of the SATA Marks has been intentional and willful.  WUFU's bad faith is evidenced at least by WUFU's use of marks identical to the SATA Marks on the WUFU Infringing Products.  SATA is entitled to injunctive relief, and SATA is also entitled to recover WUFU's profits, actual damages, punitive damages, costs, and reasonable attorneys' fees.

### Count V - Trademark Counterfeiting - 15 U.S.C. § 1114 (Against PRONA)

76.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

018482\0001\13761683.2

14

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

77.     PRONA has used spurious designations that are identical with, or substantially indistinguishable from, the SATA Marks on goods covered by SATA's federal trademark registrations, including U.S. Trademark Registration No. 3,072,417.

78.     PRONA has intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale and distribution of goods including, without limitation, at the SEMA trade show.

79.     PRONA's use of the SATA Marks to advertise, offer for sale and/or distribute the PRONA Infringing Products bearing infringing trademarks was at all times and is currently without SATA's authorization, license, or consent.

80.     PRONA's unauthorized use of the SATA Marks on and in connection with PRONA's advertisement, promotion, sale, offering for sale, and distribution of the PRONA Infringing Products at the SEMA Show trade show constitutes a use of the SATA Marks in commerce.

81.     PRONA's unauthorized use of the SATA Marks is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that the PRONA's Infringing Products are the same as PRONA's products and/or that the PRONA Infringing Products are authorized by, sponsored by, or approved by SATA, or that PRONA is affiliated with, connected to, associated with, or in some way related to SATA; (c) result in PRONA unfairly benefiting from SATA's advertising and promotion; and (d) result in PRONA unfairly profiting from SATA's reputation and trademarks all to the substantial and irreparable injury of the public, SATA, the SATA Marks, and the substantial goodwill they represent.

82.     PRONA's acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

83.     By reason of the foregoing, PRONA is liable to SATA for:  (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at SATA's election, an amount representing three (3) times SATA's damages and/or PRONA's illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

84.     SATA is also entitled to temporary, preliminary, and permanent injunctive relief, including an order permitting the seizure of all "goods and counterfeit marks . . . the means of making such [counterfeit] marks, and records documenting the manufacture, sale, or receipt of things involved in such [counterfeiting] violations" pursuant to 15 U.S.C. § 1116(d).

### Count VI - Trademark Infringement - 15 U.S.C. § 1114 (Against PRONA)

85.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

86.     Without SATA's authorization, license, or consent, PRONA has knowingly used and continues to use in commerce the SATA Marks in connection with the manufacturing, adverting, promoting, importing into, and/or selling in the United States the PRONA Infringing Products.  PRONA has used the SATA Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to, and/or trade off SATA's fame and the registered SATA Marks.

87.     PRONA's use of the SATA Marks is likely to: (a) confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of PRONA and SATA and/or the PRONA Infringing Products and SATA's products; and (b) is likely to cause such people to believe in error that the PRONA Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by SATA or that the PRONA Infringing Products are in some way affiliated with SATA.

88.     SATA has no control over the nature or quality of the goods and/or services PRONA offers.   Therefore, SATA's reputation and goodwill has been and continues to be damaged – and the value of the SATA Marks jeopardized – by PRONA's continued use of the SATA Marks and colorable imitations thereof.  Because of the likelihood of confusion between the PRONA Infringing Products and the SATA Marks, any defects, objections, or faults found with the PRONA Infringing Products will negatively reflect upon and injure the exceptional reputation that SATA has established for the products and services it offers in connection with the SATA Marks.  As such, PRONA is liable to SATA for infringement of the SATA Marks pursuant to 15 U.S.C. § 1114.

018482\0001\13761683.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

89.     PRONA's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to SATA's trademarks, business, reputation, and goodwill. SATA has no adequate remedy at law as monetary damages are inadequate to compensate SATA for the injuries caused by PRONA to its trademarks, business, reputation, and goodwill.

90.     As a direct and proximate result of PRONA's conduct, SATA has suffered and continues to suffer damages to its valuable SATA Marks, and other damages in an amount to be proven at trial.

91.     PRONA's infringement of SATA's registered trademarks is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the SATA Marks, and an exceptional case within the meaning of 15 U.S.C. § 1117(b).

92.     SATA is entitled to temporary, preliminary, and permanent injunctive relief, as well as an award of PRONA's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

**Count VII - False Designation of**

**Origin/Unfair Competition - 15 U.S.C. § 1125 (Against PRONA)**

93.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

94.     PRONA's use, promotion, offers to sell, sale, and/or importation of the PRONA Infringing Products violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The SATA Marks are federally registered, and are entitled to protection under both federal and common law. The SATA Marks have distinctive appearances with unique and non-functional designs.  SATA has extensively and continuously promoted and used the SATA Marks for many decades in the United States and worldwide.  Through that extensive and continuous use, the SATA Marks have become well-known indicators of the origin and quality of SATA's products and have acquired substantial secondary meaning in the marketplace.

95.     PRONA's use of colorable imitations of the SATA Marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the PRONA Infringing Products by creating the false and

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

018482\0001\13761683.2

misleading impression that the PRONA Infringing Products are manufactured by, authorized by, or otherwise associated with SATA.

96.     PRONA's use of colorable imitations of the SATA Marks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to SATA for which SATA has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the SATA Marks.

97.     On information and belief, PRONA's use of colorable imitations of the SATA Marks has been intentional and willful.  PRONA's bad faith is evidenced at least by WUFU's use of marks identical to the SATA Marks on the PRONA Infringing Products.  SATA is entitled to injunctive relief, and SATA is also entitled to recover PRONA's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count VIII - Common Law Trademark Infringement & Unfair Competition

### (Against PRONA)

98.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99.     SATA was the first to use the SATA Marks.  As a result of SATA's continuous promotion and sales of products bearing the SATA Marks, the SATA Marks have become widely known and SATA has been identified in the public mind as the manufacturer of the products to which the SATA Marks are applied.

100.     As a result of the experience, care, and service of SATA in producing the products to which the SATA Marks are applied, these products have become widely known and have acquired a worldwide reputation for quality, styling, and utility.  Moreover, the SATA Marks have come to symbolize SATA's reputation for quality and excellence.  The SATA Marks have also acquired secondary meaning in the marketplace, and are non-functional.

101.     PRONA, with knowledge of and with intentional disregard of SATA's rights, continues to advertise, promote, and/or sell products using the SATA Marks, or colorable and

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

018482\0001\13761683.2

18

confusing imitations thereof. PRONA's acts are likely to cause, have caused, and will continue to cause confusion as to the source and/or sponsorship of SATA's products and services.

102. PRONA's acts alleged herein and specifically, without limitation, PRONA's use, manufacture, promotion, offers to sell, selling, and/or importing into the United States products that are confusingly similar to products bearing the SATA Marks, infringes SATA's exclusive trademark rights in violation of the common law.

103. PRONA's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to SATA's trademarks, business, reputation, and goodwill. SATA has no adequate remedy at law because monetary damages are inadequate to compensate SATA for the injuries caused by PRONA to its trademarks, business, reputation, and goodwill.

104. On information and belief, PRONA's use of colorable imitations of the SATA Marks has been intentional and willful. PRONA's bad faith is evidenced at least by PRONA's use of marks identical to the SATA Marks on the PRONA Infringing Products. SATA is entitled to injunctive relief, and SATA is also entitled to recover PRONA's profits, actual damages, punitive damages, costs, and reasonable attorneys' fees.

**Count IX - Design Patent Infringement - 35 U.S.C. §§ 171 and 289 (Against WUFU)**

105. SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106. Without SATA's authorization, license, or consent, WUFU has and is continuing to make, use, offer to sell, sell, and/or import into the United States the WUFU Infringing Products, which infringe SATA's design patents USD 459,432 S1, USD 459,433 S1, and USD 644,716 S1.

107. SATA has been and continues to be irreparably harmed by WUFU's past and ongoing infringement of SATA's design patents.

108. WUFU's infringement of SATA's design patents has caused SATA to suffer damages in an amount to be determined at trial.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

**PRAYER FOR RELIEF**

**WHEREFORE**, SATA respectfully prays for:

A.      Judgment that WUFU has: (i) willfully engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114; (ii) willfully infringed the SATA Marks in violation of 15 U.S.C. § 1114; (iii) willfully used false designations of origin and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (iv) willfully violated SATA's common law rights in the SATA Marks; and (v) willfully infringed the SATA Patents in violation of 35 U.S.C. §§ 171 and 289.

B.      A temporary, preliminary, and permanent injunction against further counterfeiting, infringement, false designation of origin, and unfair competition directed against the SATA Marks, by WUFU, its officers, agents, servants, employees, attorneys, and all others in active concert or participation with any of them;

C.      A temporary, preliminary, and permanent injunction against further infringement of the SATA Patents and colorable imitations thereof, by WUFU, its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with any of them;

D.      An order, pursuant to 15 U.S.C. § 1116(d) and the Court's inherent authority, directing the seizure of all evidence of WUFU's unlawful conduct;

E.      A finding that this is an exceptional case within the meaning of 15 § U.S.C. 1117(a).

F.      An award of damages adequate to compensate SATA for the trademark infringements that have occurred pursuant to 15 U.S.C. § 1117(a), which amount shall include WUFU's profit's, SATA's damages, and the costs of the action.

G.      At SATA's election, either: (1) an award of damages adequate to compensate SATA for the intentional acts of trademark counterfeiting that have occurred, pursuant to 15 U.S.C. § 1117(b), which amount shall include three times of WUFU's profits or SATA's damages (whichever is greater), together with reasonable attorneys' fees; or (2) statutory damages in the amount of: (i) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just; or (ii) if the Court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit

018482\0001\13761683.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just.

H.     An award of damages adequate to compensate SATA for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, or an award of WUFU's profits from its infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with prejudgment interest and costs;

I.     Judgment that PRONA has: (i) willfully engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114; (ii) willfully infringed the SATA Marks in violation of 15 U.S.C. § 1114; (iii) willfully used false designations of origin and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); and (iv) willfully violated SATA's common law rights in the SATA Marks.

J.     A temporary, preliminary, and permanent injunction against further counterfeiting, infringement, false designation of origin, and unfair competition directed against the SATA Marks, by PRONA, its officers, agents, servants, employees, attorneys, and all others in active concert or participation with any of them;

K.     A temporary, preliminary, and permanent injunction against further infringement of the SATA Patents and colorable imitations thereof, by PRONA, its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with any of them;

L.     An order, pursuant to 15 U.S.C. § 1116(d) and the Court's inherent authority, directing the seizure of all evidence of PRONA's unlawful conduct;

M.     A finding that this is an exceptional case within the meaning of 15 § U.S.C. 1117(a).

N.     An award of damages adequate to compensate SATA for the trademark infringements that have occurred pursuant to 15 U.S.C. § 1117(a), which amount shall include PRONA's profit's, SATA's damages, and the costs of the action.

O.     At SATA's election, either: (1) an award of damages adequate to compensate SATA for the intentional acts of trademark counterfeiting that have occurred, pursuant to 15 U.S.C. § 1117(b), which amount shall include three times of PRONA's profits or SATA's

018482\0001\13761683.2

21

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

damages (whichever is greater), together with reasonable attorneys' fees; or (2) statutory damages in the amount of: (i) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just; or (ii) if the Court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just.

     P.     Such other and further relief as this Court deems just and proper.

Dated: November 4, 2015          Respectfully submitted,

BROWNSTEIN HYATT FARBER
SCHRECK, LLP


By: /s/ Steven A. Caloiaro
    Michael D. Rounds, Esq., Bar No. 4734
    Steven A. Caloiaro, Esq., Bar No. 12344
    5371 Kietzke Lane
    Reno, NV 89511

    *Attorneys for Plaintiff SATA GmbH & Co.*
    *KG*

## JURY TRIAL DEMAND

Plaintiff Sata GmbH & Co. KG demands a trial by jury on all counts so triable.

Dated: November 4, 2015          Respectfully submitted,

BROWNSTEIN HYATT FARBER
SCHRECK, LLP


By: /s/ Steven A. Caloiaro
    Michael D. Rounds, Esq., Bar No. 4734
    Steven A. Caloiaro, Esq., Bar No. 12344
    5371 Kietzke Lane
    Reno, NV 89511
    *Attorneys for Plaintiff  SATA GmbH & Co.*
    *KG*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
303.223.1100

018482\0001\13761683.2