1
2
3
4                   **UNITED STATES DISTRICT COURT**
5                         **DISTRICT OF NEVADA**
6
7    SATA GmbH & Co. KG,                    )
8                         Plaintiff,        )        Case No.  2:15-cv-02111-GMN-CWH
                                            )
9    vs.                                    )        **ORDER**
                                            )
10   ZHEJIANG REFINE WUFU AIR TOOLS CO.,    )
     LTD., et al.,                          )
11                                          )
                         Defendants.        )
12   _____   )

13           Presently before the court is Defendant Prona Tools Inc.'s ("Prona") Motion to Quash

14   Service of Summons (ECF No. 21), filed on December 11, 2015.  Plaintiff SATA GmbH & Co.

15   KG ("SATA") filed a response (ECF No. 22) on December 28, 2015.  Defendant Prona filed a

16   reply (ECF No. 23) and an errata (ECF No. 24) to its reply on January 7, 2016.

17           Also before the court is Defendant Zhejiang Refine Wufu Air Tools Co., Ltd.'s ("WUFU")

18   Motion to Set Aside and Vacate Entry of Default (ECF No. 26), filed on March 17, 2016.  Plaintiff

19   SATA filed a response (ECF No. 32) on April 1, 2016.  Defendant WUFU filed a reply (ECF No.

20   34) on April 11, 2016.

21           Also before the court is Defendant WUFU's Motion to Dismiss and Quash for Insufficient

22   Service of Process (ECF No. 27), filed on March 17, 2016.  Plaintiff SATA filed a response (ECF

23   No. 31) on April 1, 2016.  Defendant WUFU filed a reply (ECF No. 35) on April 11, 2016.

24           Also before the court is Plaintiff SATA's Motion for Default Judgment (ECF No. 30), filed

25   on April 1, 2016.  Defendant WUFU filed a response (ECF No. 37) on April 18, 2016.  Plaintiff

26   SATA filed a reply (ECF No. 38) on April 28, 2016.

27   / / /

28   / / /

## I.      BACKGROUND

Plaintiff SATA is a German corporation that produces paint spray guns, airbrushes, workplace safety and security equipment, and other related products.  (Compl. (ECF No. 1) at 1, 3-6.)  Defendant WUFU is a Chinese company that offered goods for sale at the Automobile Aftermarket Products Expo in Las Vegas, Nevada, in November of 2015.  (*Id.* at 1, 7-8.) Defendant Prona is a Canadian-based distribution company for a Taiwanese manufacturer that offered goods for sale at the Specialty Equipment Market Association ("SEMA") trade show, another automotive aftermarket industry trade show, in Las Vegas, Nevada, in November of 2015. (*Id.* at 1-2, 9-10.)  Plaintiff SATA alleges that at these trade shows, Defendants WUFU and Prona offered for sale counterfeit paint spray guns and related products that infringe on Plaintiff SATA's United States trademarks and design patents.  (*Id.* at 2.)

On November 4, 2015, Plaintiff SATA brought a complaint alleging claims for trademark counterfeiting under 15 U.S.C. § 1114 (counts one and five), trademark infringement under 15 U.S.C. § 1114 (count two and six), false designation of origin/unfair competition under 15 U.S.C. § 1125 (count three and seven), common law trademark infringement and unfair competition (counts four and eight) against Defendants WUFU and Prona, as well as a claim for design patent infringement under 35 U.S.C. §§ 171 and 289 against Defendant WUFU (count nine).  Plaintiff SATA filed a proof of service stating that the summons and complaint were served on Della Chen, WUFU's business manager, at the Automobile Aftermarket Products Expo in Las Vegas, Nevada, on November 5, 2015.  (Proof of Service (ECF No. 20).)  Plaintiff SATA filed a proof of service stating that the summons and complaint were served on Jason Jiang, Prona's representative, at the SEMA trade show in Las Vegas, Nevada, on November 6, 2015.  (Proof of Service (ECF No. 12).)

### A.      Service on Defendant WUFU

On November 5, 2016, the final day of the Automobile Aftermarket Products Expo, SATA's process server delivered the summons and complaint to Della Chen, who was dismantling WUFU's booth.  (Decl. of Della Chen (ECF No. 27-1) at ¶¶ 4-5; Decl. of Roy McMahan (ECF No. 31-1) at ¶ 8.)  Ms. Chen is an export sales representative for WUFU and her title is "Business Manager," though it is not an officer-level position.  (Decl. of Della Chen at ¶ 1.)  Ms Chen staffed

WUFU's booth with a colleague. (*Id.* at ¶ 4.) According to Ms. Chen, the SATA process server "handed [her] a document and told [her] that if [she] was a translator [she] should send the document to WUFU, and if [she] was an employee of WUFU [she] should take it back to the company after the trade show." (*Id.* at ¶ 6.) Ms. Chen states the process server did not ask her any questions about her role at WUFU and did not speak to anyone else at WUFU's booth. (*Id.* at ¶ 7.) Ms. Chen further states that she is not responsible for receiving documents on behalf of WUFU, that she never has received court documents for WUFU in the past, and that she did not attempt to read or understand the documents. (*Id.* at ¶¶ 8-10.) Ms. Chen states that nobody at WUFU told her to expect service of a legal document, that she was not aware that a lawsuit had been filed, and that she did not tell SATA's representatives she would accept service on behalf of WUFU. (Supp. Decl. of Della Chen (ECF No. 35-1) at ¶¶ 4-8.) Ms. Chen asked the SATA representatives to email her the documents in case she lost them. (*Id.* at ¶ 9.) When she returned to WUFU after the trade show, she gave the documents to Li Yonggang, an office director, who does not understand English and did not understand what the documents were. (Decl. of Della Chen (ECF No. 27-1) at ¶ 11.)

In contrast, both SATA's process server and attorney state that when they arrived at the booth, Ms. Chen stated that she was expecting the documents because someone from WUFU had informed her that a lawsuit had been filed the day before. (Decl. of Roy McMahan at ¶ 9; Decl. of Steven Caloiaro (ECF No. 30-6) at ¶¶ 3-5.) SATA's attorney states that Ms. Chen agreed to accept service of process. (Decl. of Steven Caloiaro at ¶ 4.) WUFU's process server and attorney further state that upon accepting the documents, Ms. Chen requested that the documents be emailed to an address that she provided to SATA's attorney. (Decl. of Roy McMahan at ¶¶ 7, 10; Decl. of Steven Caloiaro at ¶¶ 6-7.) SATA provides to the court the email that was sent at Ms. Chen's request. (Mot. for Default J. (ECF No. 30), Ex. E.)

WUFU did not answer or otherwise respond to the complaint by its deadline, and SATA moved for entry of clerk's default, which the clerk entered. (Mot. for Entry of Clerk's Default (ECF Nos. 16, 18); Default (ECF No. 19).) WUFU now moves to set aside the clerk's entry of default and to dismiss the complaint and quash service of process for improper service. (Mot. to Set Aside Clerk's Entry of Default (ECF No. 26) ["Mot. to Set Aside Default"]; Mot. to Dismiss &

Quash for Insufficient Service of Process (ECF No. 27) ["Mot. to Dismiss & Quash"].)  Plaintiff

SATA moves for default judgment against Defendant WUFU.  (Mot. for Default J. (ECF No. 30).)

### B.    Service on Defendant Prona

Defendant Prona's general manager, Jason Jiang—who is named in SATA's proof of

service—was not in the United States on the day of service.  Mr. Jiang provides a declaration

stating that on November 6, 2016, he was in Toronto, Canada, at a woodworking exposition and

that he did not accept service in this matter.  (Decl. of Jason Jiang (ECF No. 21-3) at ¶¶ 7-8.)  He

provides photographs of himself at Prona's booth at the woodworking exposition, a copy of Prona's

registration for the woodworking exposition, and a copy of his identification badge for the

woodworking exposition.  (*Id.* at Exs. A-C.)  To corroborate Mr. Jiang's statements, Prona provides

the declaration of non-party Eric Chung, the president of Golden Hill Woodworking Machinery

Ltd., who states that his company had a vendor booth at the woodworking exposition that was near

Prona's booth and that he met and spoke to Mr. Jiang numerous times on November 6, 2015.

(Decl. of Eric Chung (ECF No. 21-2) at ¶¶ 1, 3-5.)

The individual who greeted the process server at Prona's booth at the SEMA show on

November 6, 2015, was Jierong Cao, a representative of Guangzhou Prona Air Tool Co. Ltd.,[1] a

supplier for Prona that is based in China.  (Decl. of Jierong Cao (ECF No. 21-1) at ¶¶ 3-8.)  Mr.

Cao is not an employee of Prona.  (*Id.* at ¶ 14; Decl. of Jason Jiang (ECF No. 21-3) at ¶ 10.)  Mr.

Cao was stationed at Prona's booth during the trade show to answer inquiries regarding products

manufactured by Guangzhou, though at its booth Prona also presented products that were not

manufactured by Guangzhou.  (Decl. of Jierong Cao at ¶ 6.)

According to Mr. Cao, on November 6, 2015, a group of 4 to 5 individuals who introduced

themselves as Plaintiff SATA's representatives came to Prona's booth at the SEMA show and

asked to see managers or officers in charge of the booth.  (*Id.* at ¶ 7.)  Nobody from Prona was

---

[1] According to Mr. Cao's declaration, Guangzhou Prona Air Tool Co. Ltd. is located in
Guangdong, China.  (Decl. of Jierong Cao (ECF No. 21-1) at ¶ 3.  Throughout his declaration, Mr. Cao
references the province of "Guangdong" when it appears from the context that he means to refer to the
company "Guangzhou."

4

present from the booth, so Mr. Cao spoke to the SATA representatives, who asked to see his identification.  (*Id.* at ¶ 8.)  Mr. Cao provided his Chinese passport for their review, which contained his photograph and showed his legal name, Jierong Cao.  (*Id.* at ¶ 9; Decl. of Alan C. Chen (ECF No. 24) at Ex. A.)  Mr. Cao states that he told the SATA representatives that Jason Jiang was in charge of Prona and that he was not there.  (Decl. of Jierong Cao at ¶ 10.)  Mr. Cao further states that he informed SATA's representatives that he worked for one of Prona's suppliers.  (*Id.* at ¶ 11.)  Finally, Mr. Cao states that the SATA representatives took his photograph without his consent and "threw a stack of documents on one of the tables in the exhibit booth and left."  (*Id.* at ¶¶ 12-13.)

In contrast, SATA's process server states that when he approached Prona's booth with other SATA representatives and asked to speak to the manager or officer in charge, a man wearing a SEMA convention name tag bearing the name "Jason Jiang" greeted them.  (Decl. of Roy McMahan (ECF No. 22-2) at ¶¶ 7-8.)  When the process server explained that he was there for the purpose of service, "the individual stated that he was not Mr. Jiang and very quickly flashed a Chinese passport."  (*Id.* at ¶ 9.)  The process server states that he did not handle the passport and that in the brief time he saw it, he was unable to discern what it said.  (*Id.*)  According to the process server, he asked to see the passport again to determine the individual's identity, but he declined.  (*Id.*)  The process server further states that:

> [t]he individual I spoke with did not identify who Jason Jiang was, and simply kept repeating that he was not Mr. Jiang, and that Mr. Jiang was unavailable.  He stated that he did not want to take the papers.  Based upon the contradiction between his name tag and his statement, I believed he was either Mr. Jiang or a person of authority attempting to evade service.

(*Id.* at ¶ 10.)  The process server believed the man he served was a managing agent with responsibility for Prona because he came forward when the process server asked for a representative in charge and because of the process server's observations of his interactions with other Prona employees.  (*Id.* at ¶ 11.)  Additionally, the process server stated that service occurred on the final date of the trade show, that the booths were in the process of being dismantled, and that in his professional experience, "[i]ndividuals associated with the foreign company will often attempt to evade service by claiming that they have no authority to accept service on behalf of the

corporation, the company will then pack up and leave the jurisdiction." (*Id.* at ¶ 4, 7.)

SATA's counsel states that several weeks after the SEMA trade show, Mr. Jiang contacted him on behalf of Prona on multiple occasions regarding resolving the lawsuit, and Mr. Jiang never indicated that he was not the person who was served at the SEMA trade show. (Decl. of Steven A. Caloiaro (ECF No. 22-1) at 2.) Prona now moves to quash service of process on the grounds of improper service. (Mot. to Quash Service of Summons (ECF No. 21) ["Mot. to Quash"].)

## II.    WUFU'S MOTION TO DISMISS AND TO QUASH

WUFU moves to dismiss the complaint and quash service of process, arguing that Ms. Chen is not an officer, a managing or general agent, or otherwise have actual or apparent authority to receive service for WUFU. WUFU further argues that Ms. Chen's presence at a trade show is insufficient to render her an agent for service of process. Rather, WUFU argues that the court must examine Ms. Chen's role and responsibilities at WUFU to determine whether she was sufficiently integrated in the organization to render service fair, reasonable, and just. Given that WUFU has more than 500 employees, that Ms. Chen's job responsibilities exclusively deal with promoting WUFU's products for export sales, that she has never received service of process, and that the office director did not understand what the documents were demonstrates that Ms. Chen did not have actual authority to accept the documents. Additionally, WUFU argues that the process server thought Ms. Chen was a translator and asked her to pass the documents to WUFU and therefore could not have believed she had the apparent authority to accept service.

SATA responds that it properly served Ms. Chen on behalf of WUFU and that it also served WUFU by email at Ms. Chen's request, arguing that each of these methods of service satisfies Rule 4. SATA further argues that Ms. Chen had authority to accept service of process because WUFU told her to expect service, which indicates that WUFU considered her capable of accepting service. WUFU further argues that Ms. Chen was a business manager who was trusted to be the company's sole representative at the trade show and that she was so integrated with the organization that she knew to give the summons and complaint to a superior. In the alternative, SATA argues the court should quash service rather than dismissing the complaint because WUFU has not been prejudiced and received actual notice of the summons and complaint.

WUFU replies that although Rule 4 has a flexible standard, it does not allow service of process on any corporate employee—only officers, managing or general agents, or agents authorized by appointment or by law to receive service.  WUFU argues that neither Ms. Chen nor the office director read in English, understood the nature of the documents, nor were they designated to accept service for WUFU.  WUFU further argues Ms. Chen was not the sole representative at the booth, and that even if she was, that fact alone would not indicate she was authorized to accept service of process.  Additionally, WUFU argues that Ms. Chen's request for an email courtesy copy does not constitute acceptance of service.  Finally, WUFU states that it will be prejudiced if the case proceeds against it because it will be forced to defend this case, which seeks $500,000 in monetary damages against it.

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  Rule 12(b)(5) of the Federal Rules of Civil Procedure authorizes a defendant to move for dismissal due to insufficient service of process.  The plaintiff has the burden of demonstrating that service of process was valid. *R. Griggs Grp. Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1102 (D. Nev. Feb. 5, 1996) (quashing service of process on a representative of an Italian company at a trade show because the plaintiff did not meet its burden of establishing that the representative was an officer, director, employee, managing agent, general agent or an agent otherwise authorized by appointment or law to accept service).  If service of process is insufficient, the court has discretion to dismiss an action or to simply quash service. *See* Fed. R. Civ. P. 4(m); *SHJ v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006); *Filanto Spa*, 920 F. Supp. at 1102 (stating that because the Federal Rules of Civil Procedure do not provide for motions to quash service, Federal Rule of Civil Procedure 12(b)(5) is the correct provision for challenging defective service).

Rule 4(h) of the Federal Rules of Civil Procedure provides, in relevant part, that a foreign corporation, partnership, or association must be served:

/ / /

/ / /

7

(1) in a judicial district of the United States:
(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
(B) by delivering a copy of the summons and complaint to an officer, a
managing or general agent, or any other agent authorized by appointment or
by law to receive service of process[.]

Fed. R. Civ. P. 4(h)(1).  Rule 4(e)(1) provides that service of process that conforms with state law

"in the state where the district court is located or where service is made" is proper in federal court.[2]

Rule 4(h) is liberally construed to achieve its underlying purpose of giving a party notice of

a claim against it.  *Direct Mail*, 840 F.2d at 688.  Thus, an appointed agent's authority may be

implied, meaning that service may be made on "a representative so integrated with the organization

that he will know what to do with the papers.  Generally, service is sufficient when made upon an

individual who stands in such a position as to render it fair, reasonable and just to imply the

authority on his part to receive service."  *Id.* (quotation omitted).  Actual notice of a lawsuit will not

subject a defendant to personal jurisdiction, however, "if service was not made in substantial

compliance with Rule 4."  *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013).

Here, considering the totality of the evidence, and liberally construing Rule 4(h) to achieve

its purpose of giving WUFU notice of the lawsuit, the court finds that SATA has met its burden of

establishing that service of process on Ms. Chen was valid.  Although Ms. Chen's declaration states

that she does not read English, did not appreciate the legal significance of the documents, and did

not have authority to accept the documents in her capacity as WUFU's business manager, both the

process server and SATA's attorney submit declarations stating that Ms. Chen indicated that she

was aware of the lawsuit because someone from WUFU had informed her about it, agreed to accept

service of process, and requested that the documents be emailed to her.  Taken together, these facts

indicate that Ms. Chen had at least implied authority to accept service on behalf of WUFU and that

it was fair, reasonable and just for SATA's representatives to imply that she had such authority.

The court therefore will deny WUFU's motion to dismiss and/or to quash service of process.

Given that the court finds that personal service on Ms. Chen was sufficient under Rule 4, the court

---

[2]  The parties do not dispute that Fed. R. Civ. P. 4 applies in this case.  The court therefore will
not analyze service under the Rule 4 of the Nevada Rules of Civil Procedure.

does not express an opinion on whether emailing the summons and complaint to Ms. Chen independently satisfied Rule 4.

### III.     WUFU'S MOTION TO SET ASIDE DEFAULT

WUFU moves to set aside the clerk's entry of default, arguing that there was no culpable conduct on its part that led to the entry of default, that it has meritorious defenses to SATA's claims, and that setting aside the default will not prejudice SATA.  Specifically, WUFU argues that it is a Chinese company that does not have a sophisticated understanding of United States law and that WUFU did not believe that service on Ms. Chen was effective.  WUFU represents that when it became aware that SATA claimed service had been completed and the clerk entered a default, WUFU promptly retained American counsel and moved to set aside the default.

With respect to its defenses, WUFU argues that its paint spray guns are not counterfeit SATA products and do not infringe on SATA's trademarks because SATA's trademarks are invalid due to lack of secondary meaning and/or functionality.  WUFU further argues that there is no likelihood of confusion between the trade dresses of the parties' products.  WUFU also argues that its paint spray guns do not infringe SATA's patents because the patents are invalid due to obviousness and/or functionality.  Finally, WUFU argues SATA will not be prejudiced by setting aside the default because no evidence has been lost any discovery will be no more difficult.

SATA responds that WUFU received actual notice of the lawsuit and intentionally decided not to file a response, thereby attempting to interfere with the court's judicial decision making and to manipulate the legal process.  SATA argues that WUFU is not an unsophisticated litigant, but is a Chinese conglomerate doing business in numerous foreign jurisdictions across several continents and that WUFU is sophisticated enough to file, prosecute, and maintain a U.S. trademark.  SATA further argues that WUFU's defenses are not meritorious.  Regarding prejudice, SATA argues that it is unable to determine whether evidence has been lost and that it has been forced to expend significant legal expenses in litigating the motion to set aside default.  Finally, SATA argues that if the court sets aside the clerk's entry of default, it should condition setting aside the default on WUFU paying SATA's attorney's fees and costs associated with the motion to set aside the default judgment.

The court may set aside the entry of default for "good cause." Fed. R. Civ. P. 55(c); *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle ("Mesle")*, 615 F.3d 1085, 1091 (9th Cir. 2010). In ruling on a motion to set aside a default, the court considers whether the plaintiff would be prejudiced if the default is set aside, whether the defendant has a meritorious defense, and whether the defendant engaged in culpable conduct that led to the default. *Id.* The defendant bears the burden of demonstrating that these factors favor setting aside the default. *TCI Grp. Life Ins. Plan v. Knoebber ("TCI")*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds, Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). If the defendant fails to meet its burden with respect to any of these factors, the court may deny the motion to set aside the default. *Mesle*, 615 F.3d at 1091.

To determine whether the plaintiff would be prejudiced if the default judgment is set aside, "[t]he standard is whether his ability to pursue his claim will be hindered." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Setting aside a default must do more than simply delay resolution of the case to be considered prejudicial to the plaintiff. *TCI*, 244 F.3d at 701. Similarly, requiring a plaintiff to adjudicate a claim on the merits does not constitute prejudice. *Id.* Rather, the delay must result in some tangible harm, such as "loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* (quotation omitted).

To satisfy the "not extraordinarily heavy" burden of presenting a meritorious defense, the defendant seeking to vacate a default must present specific facts that would constitute a defense. *Id.* at 700. There must be some possibility that the suit would have a different outcome at trial than the result achieved by default. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

Finally, "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI*, 244 F.3d at 697 (emphasis and quotation omitted). However, if the defendant offers a good faith explanation for its neglectful failure to answer, and that explanation negates any intent to take advantage of the plaintiff, interfere with judicial decision making, or otherwise manipulate the legal process, such failure is not "intentional." *Id.* at 697-98. For example, where the defendants received actual notice of the

10

1   lawsuit, but failed to answer because they did not believe the court had subject matter jurisdiction,

2   the defendants' failure to answer was not culpable. *Id.* at 698. Instead, a defendant's conduct is

3   culpable "where there is no explanation of the default inconsistent with a devious, deliberate,

4   willful, or bad faith failure to respond." *Id.*

5     This test is "at bottom an equitable one, taking account of all relevant circumstances

6   surrounding the party's omission." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111

7   (9th Cir. 2011) (quotation omitted). The court has discretion to determine whether to set aside a

8   default. *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994). The court's discretion is

9   especially broad when considering a motion to set aside an entry of default, as opposed to a default

10   judgment. *Id.* Generally, cases should be decided on the merits, rather than by default. *See, e.g.,*

11   *Mesle*, 615 F.3d at 1091. The court has the discretion to condition the setting aside of a default

12   under Rule 55(c) on payment of attorney's fees and costs. *Nilsson, Robbins, Dalgarn, Berliner,*

13   *Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988).

14     Here, WUFU has demonstrated good cause to set aside the default. WUFU's failure to

15   answer was not culpable. WUFU has a good faith explanation for its failure to answer the

16   complaint by the deadline because WUFU contends that service of process on Ms. Chen was

17   improper. WUFU represents that when it became aware that SATA claimed service had been

18   completed and the clerk entered a default, WUFU promptly retained American counsel and moved

19   to set aside the default. This explanation negates an intent to take advantage of SATA, interfere

20   with judicial decision making, or otherwise manipulate the legal process. Additionally, SATA does

21   not point to any evidence of tangible harm caused by the delay except the attorney's fees and costs

22   it has incurred in litigating the motion for to set aside the clerk's default. WUFU also has presented

23   several potentially meritorious defenses in its motion to set aside default. Because WUFU has

24   raised these defenses, there is at least some possibility that the outcome of SATA's claims will be

25   different at trial than the outcome by default.

26     SATA would not be prejudiced if the default was set aside because discovery has not

27   commenced and SATA has not otherwise been hindered in pursuing its claims. Although SATA

28   argues WUFU's failure to respond to the complaint was culpable and resulted in delay, it does not

1   argue it has resulted in lost evidence or increased difficulties of discovery.  Setting aside the default

2   must do more than simply delay resolution of the case to be considered prejudicial to SATA.  *TCI*,

3   244 F.3d at 701.  Thus, SATA would not be prejudiced if the court sets aside entry of default.

4   Finally, setting aside the default promotes the policy of deciding cases on the merits, rather than by

5   default.  The court therefore will grant WUFU's motion to set aside default.

6          However, the court in its discretion declines to condition setting aside the default on

7   WUFU's payment of SATA's attorney's fees and costs incurred in litigating the motion to set aside

8   default.  Although the court ultimately found that service on Ms. Chen was proper under Rule 4,

9   WUFU set forth good faith legal arguments regarding the sufficiency of service, particularly in light

10  of the parties' competing declarations regarding the circumstances surrounding service at the trade

11  show.  The court therefore finds that it was not unfair for SATA to have to litigate the default.

12         Finally, given that the court will grant WUFU's motion to set aside default, the court will

13  deny SATA's motion for default judgment as moot.

14  **IV.     PRONA'S MOTION TO QUASH**

15         Defendant Prona moves to quash service of process, arguing that service was improper.

16  Specifically, Prona argues its general manager, Jason Jiang, was in Toronto, Canada on the date

17  that he purportedly was served with the summons and complaint in Las Vegas, Nevada.  Prona

18  further argues that Mr. Cao, who is an independent sales representative of a third party, was not a

19  Prona employee and did not have actual or apparent authority to accept service on Prona's behalf.

20  Prona argues that because Mr. Cao informed SATA's representatives that he did not work for

21  Prona and showed them his passport, SATA's representatives could not have reasonably believed

22  that Mr. Cao had authority to accept service.  Given that SATA did not serve the summons and

23  complaint on a manager, officer, or other person who had the authority to accept service for Prona,

24  Prona argues that service was improper and requests that the court quash service and dismiss the

25  case against Prona.

26         Plaintiff SATA responds that because Mr. Cao represented himself as the person in charge

27  at Prona's booth, was wearing a name tag that said "Jason Jiang," and never stated his name or

28  identified who the real Mr. Jiang was, its process server reasonably believed that Mr. Cao was

12

1   either Mr. Jiang himself or was a person of authority authorized to accept service.  SATA argues

2   that Prona has not been prejudiced because it received actual notice of the summons and complaint.

3   SATA further argues that because Prona has not suffered any prejudice and the issue with the

4   summons is a technical error regarding the name of the person served, the court should

5   retroactively amend the summons to state that service was made on "Mr. Jierong Cao,

6   representative for Prona Tools, Inc."  Finally, SATA argues that if the court declines to correct the

7   summons, it should only quash service rather than dismissing the case.

8        Prona replies that when a plaintiff relies on apparent authority to validate service of process,

9   it is the plaintiff's burden to show that the process server had cause to believe that the served party

10  was authorized to accept service.  Plaintiff argues that the process server's belief regarding apparent

11  authority must be supported by due diligence.  Prona further argues that in determining whether

12  apparent authority exists, the court must focus on the acts of the principal.  Viewing the events at

13  issue in the context of a booth at an industry trade show, where all visitors to a booth would be

14  greeted, Prona argues that the fact Mr. Cao approached the SATA representatives is an insufficient

15  basis for the process server to believe he had authority for Prona.  As for the fact Mr. Cao was

16  wearing Mr. Jiang's badge, Prona argues that the fact Mr. Cao stated he was not Mr. Jiang and

17  showed the SATA representatives his passport should have prompted the process server to do

18  further investigation to ascertain who should be served.  Also, Prona argues that the process

19  server's belief that Mr. Cao was actually Mr. Jiang and was trying to evade service is belied by the

20  fact Mr. Cao cooperated to the point of producing his passport for inspection.  Finally, Prona argues

21  that the fact Mr. Jiang ultimately learned of the lawsuit and contacted SATA regarding settlement

22  does not cure SATA's failure to properly serve Prona.[3]

23        It is undisputed that Mr. Cao is not an officer or managing or general agent of Prona.  The

24  fact that Mr. Cao greeted SATA's process server at Prona's booth and was wearing a SEMA trade

25

26  _____

[3] Prona requests that the court strike the portions of SATA's response that reference the parties'
27  settlement negotiation on the grounds that the use of these communications are barred by Rule 408 of the
    Federal Rules of Evidence.  The court denies this request without prejudice for the Prona to file a
28  separate motion supported by points and authorities.

show badge naming Jason Jiang may have initially suggested to the process server that Mr. Cao was an agent of Prona with authority to accept service. However, once Mr. Cao repeatedly insisted that he was not Jason Jiang, that Jason Jiang was not available, that he did not want to take the papers, and that he was not a Prona employee, it was no longer fair, reasonable, and just to imply Mr. Cao had authority to accept service for Prona or that he was so integrated with Prona that he would know what to do with the papers. Although the process server may have been suspicious that Mr. Cao was a person of authority who was attempting to evade service because it was the final day of the trade show, the booths were being dismantled, and there was a discrepancy between the name tag and Mr. Cao's assertions that he was not Jason Jiang, considering the totality of the evidence before the court, and given that it is SATA's burden to prove that service was valid, the court will quash service of process as to Prona. Additionally, although Prona eventually received actual notice of the lawsuit, culminating in Mr. Jiang contacting SATA's attorney, notice alone does not cure an otherwise defective service.

Having decided to quash service, the court in its discretion will extend the time for SATA to serve Prona under Rule 4(m) rather than dismissing the case. The court has broad discretion to extend time for service. *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2003). Further, the 90-day time period for service under Rule 4(m) "operates not as an outer limit subject to reduction, but as an irreducible allowance." *Henderson v. United States*, 517 U .S. 654, 661 (1996). Accordingly, the court will grant SATA an additional 90 days from the date of this order to serve Prona.

## V.      CONCLUSION

IT IS THEREFORE ORDERED that Defendant Zhejiang Refine Wufu Air Tools Co., Ltd.'s Motion to Dismiss and Quash for Insufficient Service of Process (ECF No. 27) is DENIED.

IT IS FURTHER ORDERED that Defendant Zhejiang Refine Wufu Air Tools Co., Ltd.'s Motion to Set Aside and Vacate Entry of Default (ECF No. 26) is GRANTED.

IT IS FURTHER ORDERED that the Clerk's entry of default against Defendant Zhejiang Refine Wufu Air Tools Co., Ltd. (ECF No. 19) is VACATED.

IT IS FURTHER ORDERED that Plaintiff SATA's Motion for Default Judgment (ECF No. 30) is DENIED.

1    IT IS FURTHER ORDERED that Defendant Prona Tools Inc.'s Motion to Quash Service of

2 Summons (ECF No. 21) is GRANTED.

3    IT IS FURTHER ORDERED that Plaintiff SATA GmbH & Co. KG must serve Defendant

4 Prona within 90 days from the date of this order.

6    DATED: September 14, 2016

_____

**C.W. Hoffman, Jr.**
**United States Magistrate Judge**

15